UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALAN S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-510-CDL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision denying benefits and **remands** the case for further proceedings.

**I.      Standard of Review**

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Procedural History

The plaintiff filed an application for Title II social security disability benefits on November 2, 2019. (R. 168-169). The plaintiff also protectively filed an application for Title XVI supplemental security income on November 6, 2019. (R. 10). The plaintiff alleged that he became disabled due to blindness or low vision, pacemaker and heart problems, concussion and water on the brain, bad left knee, and arthritis in the lower back and both shoulders. (*See* R. 203). He was 51 years old on the alleged onset date of October

8, 2019. (R. 168). Before his alleged disability, the plaintiff worked as an assembler and a fast-food shift manager. (R. 204). He has a ninth-grade education. *Id*.

The Commissioner denied the plaintiff's application on initial review and on reconsideration. (90-96, 100-105). The plaintiff then requested a hearing before an Administrative Law Judge (ALJ). ALJ Luke Liter held a telephonic hearing on March 30, 2021. (R. 32). Testimony was given by plaintiff, plaintiff's wife, and a vocational expert (VE). *Id*. On April 29, 2021, the ALJ issued a decision denying disability benefits. (R. 10-19). On October 20, 2021, the Appeals Council denied plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1-6). Following the Appeals Council's denial, plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's April 29, 2021, decision under 42 U.S.C. § 405(g).

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404,

subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, considering the claimant's age, education, and work experience. *Id.*

Here, the ALJ determined at step one that plaintiff meets the insured status requirements of the Act through December 31, 2024, and that he has not engaged in substantial gainful activity since his alleged onset date of October 8, 2019. (R. 12). At step two, the ALJ found that the plaintiff has the severe impairments of seizure disorder and lumbar degenerative disc disease. (R. 13). The ALJ found that plaintiff's heart impairment, lung disorder, and vision disorder are non-severe. *Id*.

At step three, the ALJ found plaintiff's impairments do not meet or medically equal a Listing. (R. 13-14). Specifically, the ALJ explained that the plaintiff's impairments do not meet the criteria of Listing 1.00 *et seq.*, Musculoskeletal Disorders, or 11.00 *et seq.*, Neurological Disorders. (R. 14). The ALJ found that "[d]espite the claimant's combined impairments, the medical evidence does not document a listing-level severity" or establish that the claimant's impairments are equivalent in severity to the criteria of any listed impairment. *Id*. The ALJ explained that Listing 11.02, Epilepsy, requires that certain symptoms have occurred at least three consecutive months despite adherence to prescribed treatment (along with other requirements). *Id.* Here, the record indicates that the plaintiff

4

has never been evaluated by a neurologist for seizures and his medication ran out in February 2020, "causing him to be non-compliant regarding medications/medical treatment." *Id*. Therefore, the ALJ found that the plaintiff did not meet the Listing. *Id*.

At step four, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform "less than the full range of light work as defined in 20 C.F.R. § 204.1567(b) and 416.967(b)." *Id*. The ALJ set forth the following RFC:

> The claimant is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The claimant can sit for six hours out of an eight-hour workday with normal breaks; and stand and/or walk a combined total of six hours out of an eight-hour workday with normal breaks. The claimant can occasionally climb ramps or stairs, but should avoid climbing ladders, ropes, or scaffolds. The claimant can occasionally balance, kneel, stoop, crouch, and crawl. The claimant cannot tolerate exposure to hazards such as unprotected heights or dangerous moving machinery. Finally, driving should not be a part of any job duties.

*Id*. In making this finding, the ALJ addressed plaintiff's hearing testimony as well as medical opinions, objective medical evidence, and prior administrative medical findings in the record. (*See* R. 14-17).

Citing the plaintiff's earning records, the ALJ found that plaintiff did not have past relevant work. (R. 17). Accordingly, the ALJ found that "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work." (R. 18). The ALJ also noted that plaintiff was 51 years old and qualifies as an individual closely approaching advanced age (age 50-54), as set forth in 20 C.F.R. §§ 404.1563, 416.963, and has a limited education as set forth in §§ 404.1564, 416.964. (R. 17).

At step five, the ALJ relied on the VE's testimony as to a hypothetical person with

5

the plaintiff's age, education, work experience, and RFC, and found that plaintiff can perform the requirements of representative occupations such as:

> ***Routing Clerk***, light exertion, unskilled, specific vocational preparation (SVP) level 2, Dictionary of Occupational Titles (DOT) # 222.687-022, with 105,000 jobs existing in the national economy;
>
> ***Merchandise Marker***, light exertion, unskilled, SVP level 2, DOT # 209.587-034, with 129,000 jobs existing in the national economy; and
>
> ***Production Assembler***, light exertion, unskilled, SVP level 2, DOT # 706.687-010, with 59,000 jobs existing in the national economy.

(R. 18). Accordingly, the ALJ concluded at step five that plaintiff is not disabled. (R. 19).

**IV.   Discussion**

The plaintiff contends that the ALJ improperly evaluated and selectively ignored relevant evidence in the record concerning his physical impairments. The plaintiff specifically directs the Court's attention to evidence of his alleged impairments of lung and heart disease, pain and other limitations arising from a shoulder injury, and limitations associated with his seizure disorder. The Commissioner contends that the ALJ adequately supported the RFC determination based on the evidence in the record.

In assessing a claimant's complaints of pain and other symptoms, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact

disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[1]

### A. Seizures

As the ALJ noted, the plaintiff testified that he has one to two seizures per month. (R. 41). He experiences a recovery period of thirty minutes to an hour before he can resume

---

[1]   While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna* and *Keyes-Zachary*. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").

In evaluating pain, the Commissioner considers factors including:

> (i) [The claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of . . . pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c), 416.929(c); *see also Keyes-Zachary,* 695 F.3d at 1167; *Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (quoting *Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed).

activities. (R. 44). He experiences weakness for approximately one day following a seizure. *Id*. He has experienced incontinence during seizures three times. (R. 43). In addition, he is irritable for approximately two hours after a seizure. (R. 44-45).

The plaintiff's wife testified that she has witnessed approximately ten seizures. (R. 46). She observed shaking in his hands and body at the beginning of a seizure. (R. 46, 47). She also stated that plaintiff suffers from prolonged weakness after his seizures, which lasts longer than five minutes. (R. 48).

The ALJ's decision briefly summarized portions of the medical evidence from October 2019 to February 2020, noting four occasions in the five-month period that plaintiff was treated for seizures. (R. 15-16). Additionally, the ALJ noted that the plaintiff had additional seizures on seven different occasions over the next four months, beginning in March 2020. (R. 16).

Despite this evidence, the ALJ found the intensity of symptoms was not entirely consistent with medical evidence and other evidence in the record, "for the reasons explained in this decision." (R. 15). First, the ALJ noted that the plaintiff did not seek treatment for seizures that occurred after February 2020, "due to COVID-19." (R. 16). The plaintiff also stopped taking seizure medication after February 2020. As the ALJ noted, the plaintiff "testified he could not get additional treatment due to finances and COVID-19." (R. 15). However, the ALJ appeared to discredit the plaintiff's statements because he "did not mention the worker's compensation case that had been pending." *Id*. The ALJ also cited an affidavit from one of the plaintiff's former managers at McDonald's, in which the manager contradicted the plaintiff's claim that he had fallen at work, stating that he had

8

seen the plaintiff "lower[] himself to the ground before hollering that he had fallen." (R. 16).

Consistency determinations "are peculiarly the province of the finder of fact." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *see also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) (ALJ's evaluation of symptom allegations "warrant particular deference"). However, the ALJ must explain "the link between the evidence and" consistency determination. *Kepler*, 68 F.3d at 391.

Here, the ALJ listed some reasons in his decision for his consistency determination. The ALJ cited evidence that the plaintiff had not sought treatment and had not taken his prescription medication, which is a proper consideration under the applicable regulations. (R. 15-16). However, the ALJ also appears to have relied heavily on evidence that the plaintiff was not being fully truthful in connection with his worker's compensation claim. *Id*. It is unclear why the latter evidence undermines the medical and other evidence documenting plaintiff's symptoms during and after a seizure.

Furthermore, the plaintiff contends that the ALJ improperly ignored certain parts of the record. For example, the plaintiff's wife testified that the plaintiff has fallen during seizures. (R. 47). When she observes the plaintiff shaking, she tries to move him to the floor before he falls. (R. 46). On October 31, 2019, the plaintiff sought emergency treatment for a reported seizure. (R. 555). On examination after the seizure, he was observed to still be in a confused postictal state. *Id*. This "postictal state lasted around 10 minutes." *Id*. On another occasion in February 2020, emergency personnel were called and observed the plaintiff was "actively seizing on initial contact for [approximately] 1

9

minute." (R. 714). The provider noted that the plaintiff was "unresponsive for [approximately] 5 [minutes] and postictal for approximately 25 minutes, then [mentation] rapidly improved." *Id*.

Although an ALJ is not required to discuss every piece of evidence, he must consider the entire record and "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). The Court finds that, considering the record as a whole, the ALJ failed to adequately explain how the RFC determination accounted for the plaintiff's severe seizure disorder. The ALJ's decision ignored evidence that the plaintiff's seizures cause him to fall, which reasonably could affect the plaintiff's ability to perform light work (requiring up to 6 hours of standing or walking in a day). Similarly, the ALJ's decision failed to explain how the RFC determination accommodated plaintiff's postictal periods. Remand is therefore necessary for further consideration of the record as to the plaintiff's alleged seizure disorder.

    B.    **Bilateral Shoulders**

The plaintiff also argues that the ALJ did not adequately consider the medical evidence relating to the plaintiff's bilateral shoulder impairments. The record contains medical evidence, dated prior to the alleged onset date of disability, indicating that plaintiff sought treatment for bilateral shoulder pain, physical examinations showed tenderness and a moderately reduced range of motion in both shoulders, and an x-ray in 2015 showed advanced degenerative changes in both shoulders. (R. 743, 747, 751, 755, 770). The

plaintiff was diagnosed with osteoarthritis in both shoulders and referred to an orthopedic physician. (R. 743, 747, 751).

The ALJ's decision did not discuss how he considered the plaintiff's alleged shoulder impairment at step two or explain why he did not find it to be a severe impairment. (*See* R. 13). However, in the RFC explanation, the ALJ did address some evidence on this point. The ALJ cited records that in October 2019, the plaintiff was treated for right shoulder pain after tripping and falling; however, examination showed "normal findings including normal ranges of motion" in both shoulders. (R. 15).

On November 19, 2019, the plaintiff was treated by Dr. Kenneth Trinidad after falling at work. Dr. Trinidad observed tenderness over the bicipital groves of the shoulders and crepitance; weakness in the muscles of the shoulder girdles to resistance testing; and tenderness to palpation with spasm in the cervical, thoracic, and lumbar spine. (R. 16). Dr. Trinidad "concluded there were no fixed sensory or motor deficits appreciated" and referred the plaintiff to orthopedic and neurological specialists. *Id*.

While the ALJ acknowledged the above portions of Dr. Trinidad's report, he failed to address other findings. Dr. Trinidad observed diminished range of motion and weakness in the plaintiff's shoulders. Specifically, Dr. Trinidad reported:

> There was weakness in the muscles of the shoulder girdles bilaterally to resistance testing. Range of motion testing of the right shoulder revealed flexion 150 degrees, extension 20 degrees, abduction 120 degrees, adduction 50 degrees, internal rotation 30 degrees and external rotation 50 degrees. Range of motion testing of the left shoulder revealed flexion 150 degrees, extension 20 degrees, abduction 120 degrees, adduction 50 degrees, internal rotation 30 degrees and external

>rotation 50 degrees. There were positive Neer and Hawkins tests bilaterally.

(R. 652). Dr. Trinidad further noted the plaintiff's complaints of restricted movement and weakness in his shoulders, and he stated that the shoulder pain woke him from sleep. *Id*.

Dr. Trinidad assessed the plaintiff with "[b]ilateral shoulder injuries with impingement syndrome and possible rotator cuff tears resulting from work related trauma of October 8, 2019." (R. 653). In addition to referring the plaintiff to an orthopedic specialist, Dr. Trinidad recommended a CT arthrogram of the shoulders to rule out tears. *Id*. He also recommended "a trial of cortisone injections to the shoulders and aggressive therapy." *Id*.

Notably, the state agency consultants, whose findings are cited in the ALJ's decision to support the RFC determination, did not include Dr. Trinidad's report in the list of records they reviewed. (R. 59-71, 74-89). Thus, it is not clear whether Dr. Trinidad's findings were considered in their RFC findings.

Because the ALJ relied on the consultants' findings to support the RFC determination, and the ALJ's discussion omitted substantial portions of Dr. Trinidad's report and other medical evidence relating to the plaintiff's alleged shoulder impairment, the Court cannot determine whether all the evidence relevant to this alleged impairment was properly considered. Remand is therefore necessary for further consideration of the record as to the plaintiff's alleged arthritis and bilateral shoulder impairments.

### C. Lung and Heart Disorders

The plaintiff further complains that the ALJ erred in finding his alleged lung impairment non-severe. The only evidence cited by the plaintiff is lung function testing from October 4, 2018, a date prior to the alleged onset date of disability. (Doc. 15 at 5). The plaintiff alleges that the function test results met the requirements of the listing. However, Listing 3.02(A)-(B), for chronic respiratory disorders, requires an FEV1 result of less than or equal to 1.75, or a FVC result of less than or equal to 2.20, for a male of plaintiff's age and height. 20 C.F.R. pt. 404, subpt. P, app.1, § 3.02. Plaintiff's lowest FEV1 result was 2.52, well above the 1.75 listing requirement. (R. 333). Similarly, plaintiff's lowest FVC result was 3.57, well above the 2.20 listing requirement. *Id*. Plaintiff's argument fails in this regard.

The plaintiff further alleges that the ALJ erred by finding his heart disorder non-severe. The plaintiff alleges that his "heart impairment is severe in that it required an implantable cardioverter defibrillator or permanent pacemaker[.]" (Doc. 15 at 6). Notably, the ALJ summarized medical records related to plaintiff's heart disorder, including his history of a permanent pacemaker placement, but found the heart disorder to be non-severe. (R. 13). The ALJ noted that the plaintiff "reported occasional episodes of chest discomfort" but such discomfort was relieved with sublingual nitroglycerin. *Id*.

A claimant's subjective complaints of pain or other symptoms, alone, cannot establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Rather, "[t]he burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence [to show] the existence of the

disability." *Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004). Moreover, the focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000) (affirming where, *inter alia*, claimant had not "directed [the court's] attention to any medical evidence that was disregarded" related to alleged functional limitation). Because the plaintiff has not directed the Court to any evidence that was disregarded by the ALJ in relation his lung or heart impairment, the Court cannot find that the ALJ erred regarding plaintiff's alleged lung and heart impairments.

## V.     Conclusion

For the reasons set forth above, the Court finds the ALJ did not consider the full record as it relates to plaintiff's seizure disorder and bilateral shoulder impairment. Therefore, the decision of the Commissioner finding the plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

**SO ORDERED** this the 31st day of March, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge